**B104 (FORM 104) (08/07)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Walter O'Cheskey, Liquidating Trustee | DEFENDANTS<br>Frances Maddox Estate, et al. |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Max R. Tarbox          Stephen A. McCartin<br>2301 Broadway          Gardere Wynne Sewell LLP<br>Lubbock, TX 79401      1601 Elm St., Ste. 3000<br>                       Dallas, TX 75201 214-999-3000 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    ☑ Other<br>□ Trustee        Liquidating Trustee | PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    ☑ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Avoidance of Preference and Fradulent Transfer (11 U.S.C. §§ 544, 547, 548, 550)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☑ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $106,692.00 |

| Other Relief Sought |
|---|

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>American Housing Foundation | BANKRUPTCY CASE NO.<br>09-20232 | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern | DIVISION OFFICE<br>Amarillo | | NAME OF JUDGE<br>Robert L. Jones |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Stephen A. McCartin | | | |
| DATE<br>4/21/2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Stephen A. McCartin | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448

Stephen A. McCartin (TX 13374700)
Marcus Helt (TX 24052187)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Phone: 214.999.3000

**COUNSEL FOR WALTER O'CHESKEY,
TRUSTEE OF THE AHF LIQUIDATING
TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **American Housing Foundation,** | § § | |
| Debtor. | § § § | **Case No.:  09-20232-RLJ** |
| | § | |
| **Walter O'Cheskey, Trustee,** | § § | |
| Plaintiff, | § § | |
| **v.** | § § | **Adversary No. _____** |
| **Frances Maddox Estate, John Does 1-50, and ABC Entities 1-50,** | § § § § | |
| Defendants. | § | |

### TRUSTEE'S COMPLAINT TO RECOVER
### AVOIDABLE TRANSFERS AND OBTAIN OTHER RELIEF

Walter O'Cheskey, the trustee of the AHF Liquidating Trust (the "**Trustee**" or

"**Plaintiff**") for American Housing Foundation ("**AHF**" or "**Debtor**"), hereby files this

*Complaint* (the "**Complaint**") against the Defendants and in support thereof respectfully states as

follows:

## I.
## NATURE OF THE ACTION

1.      Among other things, in this adversary the Plaintiff seeks to:

(a)      avoid and recover transfers of the Debtor's interest in property from the

Defendant, any person or entity for whose benefit such transfers were made, and any

subsequent transferee:

(i)      all preferential transfers made by the Debtor, AHF Development,

Ltd., or the Affiliates (as that term is defined in the Plan) (collectively, the

"**Transferor**") during the applicable statutory period[1] prior to the bankruptcy

filing, and

(ii)      all fraudulent transfers made by the Transferor during (x) the 2-

year period prior to the bankruptcy filing under 11 U.S.C. § 548 and (y) the 4-year

period prior to the bankruptcy filing under 11 U.S.C. § 544 and the Texas

Uniform Fraudulent Transfer Act; and

(b)      obtain other relief as the Court deems just and equitable.

---

[1] The applicable statutory period for preferential transfers is one year prior to the Petition Date under 11 U.S.C. §
547(b)(4)(B) for "insiders" as that term is defined in 11 U.S.C. §101(31) or applied by the federal courts and ninety
days prior to the Petition Date for "non-insiders." For non-insiders, the "Preference Period" is the ninety-day period
prior to the Petition Date. For insiders, the "Preference Period" is the one-year period prior to the Petition Date.

## II.
## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 544, 547, 548, 550, 551, Federal Rules of Bankruptcy Procedure 7001 and 7003, and applicable state law to avoid and recover transfers of certain property interests of the Debtor.

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), (H), and (O).

5.     This Complaint relates to the American Housing Foundation bankruptcy case, case number 09-20232, filed under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division.  Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1409(a).

## III.
## THE PARTIES

6.     On April 21, 2009 (the "**Petition Date**"), an involuntary petition for relief under the Bankruptcy Code was filed against AHF in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division under Chapter 11 of the Bankruptcy Code, commencing Bankruptcy Case No. 09-20232 (the "**Bankruptcy Case**") and creating the bankruptcy estate of AHF (the "**Estate**").

7.     On or about June 11, 2009, AHF filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing Case No. 09-20373 ("**Second Case**").

8.      On July 17, 2009, the Court issued its *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* consolidating the Second Case into the Bankruptcy Case (09-20232).

9.      On January 21, 2010, Texas Capital Bank ("**TCB**") filed a motion to appoint a chapter 11 trustee [Docket No. 653], arguing that the Debtor's management was incompetent and was grossly mismanaging the Debtor and its estate.

10.     On April 28, 2010, the Bankruptcy Court granted TCB's motion [Docket No. 1096] and authorized the appointment of a chapter 11 trustee in the Bankruptcy Case. Shortly thereafter, the United States Trustee's Office appointed Walter O'Cheskey as the chapter 11 trustee for the Debtor's bankruptcy estate.

11.     On December 8, 2010, this Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors* [Docket No. 1918] (the "**Confirmation Order**"), confirming the *Second Amended Joint Chapter 11 Plan Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors* [Docket No. 1909] (the "**Plan**").

12.     Under the terms of the Plan and Confirmation Order, Plaintiff, Walter O'Cheskey, was appointed trustee of the AHF Liquidating Trust.

13.     As the trustee of the AHF Liquidating Trust, Plaintiff is vested with the authority and right to prosecute and settle all Estate causes of action, including the causes of action asserted in this Complaint.

14.     AHF Development, Ltd. ("**AHFD**") is a limited partnership that filed for relief under Chapter 11 of the Bankruptcy Code in this District and in this Division, Case Number 09-20703, on October 19, 2009.  The Debtor is the general partner of AHFD.

15.     Upon information and belief, the Frances Maddox Estate (the "**Defendant**") is a decedent's estate.  Defendant may be served with process by serving its trustee, Robert Templeton at 2405 S. Travis Street, Amarillo, Texas 79109.

16.     Upon information and belief, defendants John Does 1-50 and defendants ABC Entities 1-50 are (a) initial transferees of the avoidable transfers described herein, (b) entities for whose benefit such avoidable transfers were made, or (c) immediate or mediate transferees of such initial transferee, as described in section 550 of the Bankruptcy Code.  Defendants John Does 1-50 and ABC Entities 1-50 are referred to herein, collectively, as the "**Doe/ABC Defendants**."

## IV.
## GENERAL ALLEGATIONS

### A.     Background

17.     Steve Sterquell ("**Sterquell**") founded AHF and was the president and chief executive officer of AHF until his death in April 2009.  At that time, a substantial amount of unsecured claims were asserted against AHF.  In addition, AHF directly or indirectly owned interests in special purpose entities that own and operate approximately 66 apartment complexes located in nine states ("**SPEs**").  These SPEs were formed for a legitimate business purpose, which was to provide affordable housing while at the same time providing limited partner/tax-credit partners and AHF with legitimate real-estate-investment opportunities.  However, while AHF and the tax-credit limited partners were engaged in the legitimate affordable-housing

business through the SPEs, Sterquell and certain soft-money partners were involved in the illegitimate activity of manufacturing illegitimate tax basis and for the purpose of taking tax deductions in return for what were in actuality loans.

18.     This soft-money structure was designed by Sterquell and participated in by the "soft-money" investors who knew, or should have known, that the investment was purely for illegitimate and improper tax purposes.  Upon information and belief, this scheme also had characteristics of a Ponzi scheme under which guaranteed returns to old investors could only be satisfied by the flow of funds from new investors.  To that end, corporate formalities were ignored and funds were transferred without adequate consideration.  By generating a continuing influx of cash from new "investors," the Debtor was able to make payments to old investors, notwithstanding its insolvency, during the 4-year period prior to the Petition Date.  During that same period, the Debtor and certain SPEs experienced cash shortages, and Sterquell was dependent on new investor money to continue this scheme and provide cash for the Debtor's operations and to fund payments to prior investors.

19.     Sterquell also made certain transfers of the Debtor's interest in property to various transferees on account of goods or services provided or rendered to the SPEs or other entities but not to the Debtor.

20.     Notwithstanding the fact that such goods or services provided no benefit to the Debtor, payments for such services were made using property of the Debtor, and the Debtor received no contribution or reimbursement for such payments from the SPEs.

**B.        Fraudulent Obligations**

21.        During the two-year[2] and four-year[3] periods immediately before the Petition Date, the Debtor executed guaranties in favor of the Defendant.  The Trustee believes that these guaranties are avoidable under sections 544, 548, and Texas Uniform Fraudulent Transfer law, because they were obligations made (a) to or for the benefit of the Defendant, (b) to hinder, delay, or defraud existing or future creditors or (b) for less than reasonably equivalent value in exchange for each obligation while the Debtor was insolvent (collectively, the "**Fraudulent Obligation**").

22.        The Fraudulent Obligation (a) was made when the Debtor was insolvent because (i) the amount of the Debtor's liabilities exceeded the value of its assets or (ii) the Debtor was generally unable to pay its debts as they became due or (b) resulted in the Debtor becoming insolvent.

23.        The Fraudulent Obligation was also made when the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital.

24.        The Fraudulent Obligation was also made when the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

25.        The Trustee has or will in the near future object to the claim(s) asserted by the Defendant.  One ground for that objection is that the Fraudulent Obligation should be avoided under sections 544, 548, and the Texas Uniform Fraudulent Transfer Act.  If the Trustee is

---

[2] Throughout this Complaint, the two-year period is meant to be between April 19, 2007, and April 21, 2009.
[3] Throughout this Complaint, the four-year period is meant to be between April 19, 2005, and April 21, 2009.

TRUSTEE'S COMPLAINT TO RECOVER
AVOIDABLE TRANSFERS AND OBTAIN OTHER RELIEF – Page 7

successful in avoiding the guaranties under applicable law, and the Court disallows all claims asserted against the Estate by the Defendant, all transfers of the Debtor's property made to the Defendant during the four-year period are fraudulent transfers under sections 544, 548, and the Texas Uniform Fraudulent Transfer Act.

### C.    Transfers to the Defendant

26.    Prior to the Petition Date, the Transferor made one or more transfers of an interest in the Debtor's property, to or for the benefit of, the Defendant (the "**Transfers**"). A schedule identifying each Transfer, including the date of such Transfer, the identity of the Transferor and of the Defendant transferee, and the Transferor's bank account, is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.    Transfers made during the Preference Period are, collectively, the "**Preferential Transfers.**" Transfers made during the two-year period prior to the Petition Date are, collectively, the "**2-Yr Transfers.**" Transfers made during the four-year period prior to the Petition Date are, collectively, the "**4-Yr Transfers.**" The 2-Yr Transfers and the 4-Yr Transfers are, collectively, the "**Avoidable Transfers.**"

27.    The money comprising each Preferential Transfer was property of the Debtor because (a) the money came from a bank account owned by the Debtor and into which only money owned by the Debtor was deposited; (b) the money came from a bank account (i) held in the name of the Debtor's alter ego, (ii) over which the Debtor exercised control and dominion, or (iii) operated for the benefit of the Debtor; or (c) the money deposited into the bank account owned by the Debtor was commingled with other funds owned by the Debtor.

28.    Each Preferential Transfer was made to or for the benefit of the Defendant.

29.    Each Preferential Transfer was made for or on account of an antecedent debt owed by the Debtor to the Defendant.

30.     Each Preferential Transfer was made during the Preference Period and when the

Debtor (a) was insolvent because (i) the Debtor's liabilities exceeded its assets or (ii) the Debtor

was generally unable to pay its debts as they became due or (b) presumed insolvent under 11

U.S.C. § 547(f).

31.     Each Preferential Transfer enabled the Defendant to receive more than the

Defendant would have received if: (a) the Bankruptcy Case were a case under chapter 7 of the

Bankruptcy Code; (b) the Preferential Transfers had not been made; and (c) the Defendant

received payment on account of the debt satisfied by the Preferential Transfer to the extent

provided by the provisions of the Bankruptcy Code.

32.     The money comprising each Avoidable Transfer was property of the Debtor

because (a) the money came from a bank account owned by the Debtor and into which only

money owned by the Debtor was deposited; (b) the money came from a bank account (i) held in

the name of the Debtor's alter ego, (ii) over which the Debtor exercised control and dominion, or

(iii) operated for the benefit of the Debtor; or (c) the money deposited into the bank account

owned by the Debtor was commingled with other funds owned by the Debtor.

33.     Each Avoidable Transfer was made to or for the benefit of the Defendant.

34.     Each Avoidable Transfer was made to hinder, delay, or defraud existing or future

creditors or for less than reasonably equivalent value in exchange for that Avoidable Transfer.

35.     Each Avoidable Transfer (a) was made when the Debtor was insolvent because (i)

the Debtor's liabilities exceeded its assets or (ii) the Debtor was generally unable to pay its debts

as they became due or (b) resulted in the Debtor becoming insolvent.

36.     Each Avoidable Transfer was made when the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital.

37.     Each Avoidable Transfer was made when the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

## V.
## COUNT ONE
### (Avoidance, Preservation, and Return of Preferential Transfers
### Under 11 U.S.C. §§ 547, 550, and 551)

38.     Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

39.     Upon information and belief, during the Preference Period, the Debtor continued to operate its business affairs, including the transfer of property by checks, cashier's checks, wire transfers, or otherwise to certain transferees, including the Defendant.

40.     During the Preference Period, the Transferor made one or more transfers of an interest in the Debtor's property to, or for the benefit of, Defendant.

41.     Each Preferential Transfer was made from the Debtor's property.

42.     Each Preferential Transfer was made to or for the benefit of the Defendant.

43.     The Defendant was a creditor (within the meaning of 11 U.S.C. § 101(10)) of the Debtor when the Defendant received the Preferential Transfers.

44.     When each Preferential Transfer was received, the Defendant alleged a right to payment from the Debtor.   As a result, the Preferential Transfers were made for or on account of an antecedent debt owed by the Debtor before each such Preferential Transfer was made.

45.     Each Preferential Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b) because it either reduced or fully satisfied an antecedent debt then owed by the Debtor to the Defendant.

46.     Each Preferential Transfer was made during the Preference Period.

47.     Each Preferential Transfer was made while the Debtor was insolvent.

48.     Each Preferential Transfer enabled Defendant to receive more than it would have received if (a) the Bankruptcy Case was a case under chapter 7 of the Bankruptcy Code; (b) the Preferential Transfer had not been made; and (c) Defendant received payment on account of the debt paid by the Preferential Transfer to the extent provided by the Bankruptcy Code (a **"Liquidation Scenario"**).

49.     Upon information and belief, no unsecured creditor will receive 100% of its unsecured claim in the Bankruptcy Case.  Thus, Defendant received more from each Preferential Transfer than it would have received in a Liquidation Scenario had each Preferential Transfer not been made.

50.     Each Preferential Transfer constitutes an avoidable preference within the meaning of 11 U.S.C. § 547.

51.     Defendant is either the initial transferee or the immediate or mediate transferee of such initial transferee or are persons for whose benefit the Preferential Transfer was made.

52.     As of the date hereof, the Defendant has not returned any Preferential Transfer to the Estate.

53.     As a result of the foregoing, pursuant to 11 U.S.C. §§ 547(b), 550, and 551, Plaintiff is entitled to judgment (a) avoiding and preserving each Preferential Transfer; (b) directing that each Preferential Transfer be set aside; and (c) recovering each Preferential

Transfer or the value thereof from the Defendant for the benefit of the Estate and the Liquidating Trust.

## VI.
## COUNT TWO
### (Avoidance, Preservation, and Return of Actual Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(A), 550, and 551)

54.     Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

55.     The 2-Yr Transfers were made from the Debtor's property.

56.     The 2-Yr Transfers were made with the Debtor's actual intent to hinder, delay, or defraud creditors of the Debtor because the 2-Yr Transfers were made in connection with and in furtherance of the Debtor's ongoing fraudulent scheme.

57.     The Debtor knew of its dependence on new investor money to provide cash for operations and to fund payments to prior investors.

58.     The 2-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 548(a)(1)(A).

59.     Defendant is either the initial transferee of a 2-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 2-Yr Transfer was made.

60.     As of the date hereof, Defendant has not returned any 2-Yr Transfer to the Estate.

61.     As a result of the foregoing, pursuant to 11 U.S.C. §§548(a)(1)(A), 550, and 551, Plaintiff is entitled to a judgment (a) avoiding and preserving the 2-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 2-Yr Transfers be set aside; and (c) recovering

the 2-Yr Transfers, or the value thereof, from the Defendant for the benefit of the Estate and the

Liquidating Trust.

## VII.
## COUNT THREE
### (Avoidance, Preservation, and Return of Constructively Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(B), 550, and 551)

62.    Plaintiff restates and realleges the above facts, allegations, and averments as if

fully set forth herein.

63.    The 2-Yr Transfers were made from the Debtor's property.

64.    The Debtor was (a) insolvent when the 2-Yr Transfers were made or, in the

alternative, became insolvent as a result of the 2-Yr Transfers; (b) engaged in a business or a

transaction, or were about to engage in business or transaction, for which the property remaining

with the Debtor was unreasonably small capital when the 2-Yr Transfers were made; or,

alternatively, (c) at the time the 2-Yr Transfers were made, the Debtor intended to incur, or

believed that it would incur, debts that would be beyond the Debtor's ability to pay as they

matured.

65.    The Debtor received less than reasonably equivalent value in exchange for the 2-

Yr Transfers.

66.    The 2-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. §

548(a)(1)(B).

67.    Defendant is either the initial transferee of a 2-Yr Transfer or the immediate or

mediate transferee of such initial transferee or is a person for whose benefit the 2-Yr Transfer

was made.

68.    As of the date hereof, Defendant has not returned any 2-Yr Transfer to the Estate.

69.    As a result of the foregoing, pursuant to 11 U.S.C. §§548(a)(1)(B), 550, and 551, Plaintiff is entitled to a judgment (a) avoiding and preserving the 2-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 2-Yr Transfers be set aside; and (c) recovering the 2-Yr Transfers, or the value thereof, from the Defendant for the benefit of the Estate and the Liquidating Trust.

## VIII.
## COUNT FOUR
### (Avoidance, Preservation, and Return of Actual Fraudulent Transfers Under 11 U.S.C. §§ 544, 550, 551, and §§ 24.001 – 24.013 of the Texas Fraudulent Transfer Act)

70.    Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

71.    The 4-Yr Transfers were made from the Debtor's property.

72.    The 4-Yr Transfers were made with the Debtor's actual intent to hinder, delay, or defraud creditors of the Debtor because the 4-Yr Transfers were made in connection with and in furtherance of the Debtor's ongoing fraudulent scheme.

73.    The Debtor knew of its dependence on new investor money to provide cash for operations and to fund payments to prior investors.

74.    The Debtor had at least one creditor when the 4-Yr Transfers were made.

75.    The 4-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 544 and § 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act.

76.    Defendant is either the initial transferee of a 4-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 4-Yr Transfer was made.

77.    As of the date hereof, Defendant has not returned any 4-Yr Transfer to the Estate.

78.     As a result of the foregoing, pursuant to 11 U.S.C. § 544 and § 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act, Plaintiff is entitled to a judgment (a) avoiding and preserving the 4-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 4-Yr Transfers be set aside; and (c) recovering the 4-Yr Transfers, or the value thereof, from the Defendant for the benefit of the Estate and the Liquidating Trust.

## IX.
## COUNT FIVE
### (Avoidance, Preservation, and Return of Constructively Fraudulent Transfers
### Under 11 U.S.C. §§ 544, 550, and 551 and §§ 24.001 – 24.013
### of the Texas Fraudulent Transfer Act)

79.     Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

80.     The 4-Yr Transfers were made from the Debtor's property.

81.     The Debtor received less than reasonably equivalent value for the 4-Yr Transfers.

82.     The Debtor was (a) insolvent when the 4-Yr Transfers were made or, in the alternative, became insolvent as a result of the 4-Yr Transfers; (b) engaged in a business or a transaction, or were about to engage in business or transaction, for which the property remaining with the Debtor was unreasonably small capital when the 4-Yr Transfers were made; or, alternatively, (c) when the time the 4-Yr Transfers were made, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as they matured.

83.     The Debtor had at least one creditor when the 4-Yr Transfers were made.

84.     Debtor had unsecured creditors at the time of each Fraudulent Transfer who under non-bankruptcy law could have avoided the Fraudulent Transfers.

85.    The 4-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 544 and §§ 24.005(a)(2) and 24.006 of the Texas Uniform Fraudulent Transfer Act.

86.    Defendant is either the initial transferee of a 4-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 4-Yr Transfer was made.

87.    As of the date hereof, Defendant has not returned any 4-Yr Transfer to the Estate.

88.    As a result of the foregoing, pursuant to 11 U.S.C. §§ 544, 550, and 551 and §§ 24.005(a)(2) and 24.006 of the Texas Uniform Fraudulent Transfer Act, Plaintiff is entitled to a judgment (a) avoiding and preserving the 4-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 4-Yr Transfers be set aside; and (c) recovering the 4-Yr Transfers, or the value thereof, from the Defendant for the benefit of the Estate and the Liquidating Trust.

## X.
## COUNT SIX
### (Preservation, Recovery, and Return of Preferential and
### Fraudulent Transfers Under 11 U.S.C. §§ 550, 551)

89.    Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

90.    The Preferential Transfers are avoidable preferential transfers in violation of 11 U.S.C. § 547(b).

91.    The Avoidable Transfers are avoidable fraudulent transfers in violation of 11 U.S.C. §§ 544 and 548 and §§ 24.005 and 24.006 of the Texas Uniform Fraudulent Transfer Act.

92.    The Doe/ABC Defendants are either initial transferees of the Preferential Transfers or the Avoidable Transfers or immediate or mediate transferees of such initial

transferees or persons for whose benefit the Preferential Transfers or Avoidable Transfers were made.

93.     The Doe/ABC Defendants did not receive the Preferential Transfers or the Avoidable Transfers in good faith and without knowledge of the voidability of the Avoidable Transfers.

94.     As of the date hereof, no Doe/ABC Defendant has returned a Preferential Transfer or an Avoidable Transfer to the Estate.

95.     As a result of the foregoing, pursuant to 11 U.S.C. §§ 550 and 551, Plaintiff is entitled to a judgment (a) preserving the Preferential Transfers and the Avoidable Transfers for the Estate and the Liquidating Trust; and (b) recovering the Preferential Transfers and the Avoidable Transfers, or the value thereof, from Defendant for the benefit of the Estate and the Liquidating Trust.

## XI.
## COUNT SEVEN
### (Attorneys' Fees and Costs)

96.     Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

97.     As a result, and pursuant to Federal Rule of Bankruptcy Procedure 7008(b), Plaintiff is entitled to recover his reasonable costs and legal fees incurred in connection with this proceeding.

## XII.
## RESERVATION OF RIGHTS

98.     During this Adversary Proceeding, Plaintiff may learn through discovery or otherwise of additional transfers by the Transferor to, or for the benefit of, the Defendant that were unknown to the Plaintiff as of the date of this Complaint (the "**Additional Transfers**").

99.     Plaintiff intends to avoid and recover all transfers of the Debtor's interest in property and to or for the benefit of the Defendant or any other transferee.  Plaintiff reserve its right to supplement and amend this Complaint, including, without limitation, the right to (a) further state/allege/aver information regarding the Transfers; (b) seek to recover Additional Transfers; (c) modify or revise the Defendant; (d) allege additional defendants; (e) allege additional causes of action arising under chapter 5 of the Bankruptcy Code that may become known to Plaintiff at any time during this Adversary Proceeding through discovery or otherwise, and for the all such amendments to this Complaint to relate back to the original Complaint.

100.    If Defendant has filed a proof of claim or have a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or have requested or may otherwise request payment from the Estate, this Complaint is not intended to be, nor should it be construed as, a waiver of the Plaintiff's right to object to such Claims for any reason, including, without limitation, 11 U.S.C. § 502, and all such rights are expressly reserved.

## XIII.
## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests entry of a judgment in his favor:

(a)      declaring that the Preferential Transfers are avoided and set aside as preferential transfers pursuant to 11 U.S.C. § 547;

(b)    declaring that the 2-Yr and 4-Yr Transfers are avoided and set aside as fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfer Act;

(c)    directing and ordering that any Transfer avoided pursuant to 11 U.S.C. §§ 544, 547, and 548 be preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551;

(d)    directing and ordering Defendant and the DOE/ABC Defendants, or any immediate or mediate transferee thereof, turnover to Plaintiff the full amount or value of the Transfers received by such defendants, or any immediate or mediate transferee of such defendants, pursuant to 11 U.S.C. § 550;

(e)    awarding judgment against Defendant the DOE/ABC Defendants and in Plaintiff's favor in amount equal to:

(i)    the full amount of the Transfers (and any other avoided transfers discovered after the date of this Complaint) made to each such defendant;

(ii)    pre-judgment interest at the maximum legal rate running from the time of the Transfers until the date of judgment herein;

(iii)    post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full; and

(iv)    attorney's fees and costs incurred by Plaintiff in this suit;

(f)    awarding the Plaintiff such other and further relief that this Court deems just and proper.

Dated: April 21, 2011

Respectfully Submitted by:

Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: (806) 686-4448
Fax:    (806) 368-9785

and

/s/ Stephen A. McCartin
Stephen A. McCartin (TX 13374700)
Marcus A. Helt (TX 24052187)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL FOR WALTER FOR
WALTER O'CHESKEY, TRUSTEE OF
THE AHF LIQUIDATING TRUST**

# Exhibit A

Transferee:  Frances Maddox Fund

| Date | Date Range | Check/Wire # | Total | Transferor |
|------|-----------|-------------|-------|-----------|
| 09/19/07 | Between 1-2 Yrs | Wire | 17,000 | AHF Development LTD |
| 01/14/08 | Between 1-2 Yrs | 1893 | 22,500 | AHF Development LTD |
| 04/01/08 | Between 1-2 Yrs | 1949 | 22,192 | AHF Development LTD |
| | **Between 1-2 Yrs Total** | | 61,692 | |
| 07/08/08 | 90 Days to 1 Yr | 2037 | 22,500 | AHF Development LTD |
| 10/06/08 | 90 Days to 1 Yr | 2100 | 22,500 | AHF Development LTD |
| | **90 Days to 1 Yr Total** | | 45,000 | |
| | **Grand Total** | | 106,692 | |